UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DANIEL VARGAS MESA,<br>Petitioner,<br><br>v.<br><br>MICHAEL NESSINGER, *Warden of the Wyatt Detention Facility*; MARKWAYNE MULLIN, *Secretary of the Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, *Attorney General of the United States*; DAVID T. WESLING, *Boston Field Office Director, U.S. Immigration and Customs Enforcement, Removal Operations*; and DAVID VENTURELLA, *Director, U.S. Immigration and Customs Enforcement*,<br>Respondents. | No. 26-cv-566-JJM-PAS |

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Daniel Vargas Mesa has filed a Habeas Petition under 28 U.S.C. § 2241, arguing that his arrest and continued detention by Immigration and Customs Enforcement ("ICE") is unlawful, and that he must be released and given a bond hearing before an immigration judge ("IJ") under 8 U.S.C. § 1226(a). ECF No. 1. The Government asserts that Mr. Vargas is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) as a noncitizen who had his humanitarian parole terminated by ICE. ECF No. 7.

For the reasons stated below, the Court GRANTS Mr. Vargas' Petition and ORDERS the Government to immediately release him from ICE custody and provide him with a bond hearing under Section 1226(a).

## I. BACKGROUND

### A. Statutory and Regulatory Framework

The Government's power to detain a noncitizen must be grounded in a specific provision of the Immigration and Nationality Act ("INA"). *See, e.g.*, *Gonzalez Lopez v. Wesling*, 828 F. Supp. 3d 284, 288 (D.R.I. 2026). Two distinct statutory provisions—Section 1225(b) and Section 1226(a)—generally authorize the Department of Homeland Security ("DHS") to detain noncitizens before they have been ordered removed from the United States.

#### 1. Detention Under Section 1225(b)(1)

Section 1225(b) applies to "applicants for admission" who are generally encountered "at the Nation's borders and ports of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). An "applicant for admission" is defined as a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Id.* (quoting 8 U.S.C. § 1225(a)(1)). The Supreme Court has recognized two types of applicants for admission: "those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.*

As relevant here, noncitizens covered by Section 1225(b)(1) are those who are subject to "expedited removal" proceedings. *Id.* Noncitizens may be eligible for expedited removal if an immigration officer deems them to be inadmissible due to

fraud, misrepresentation, or lack of valid entry documentation. 8 U.S.C. § 1225(b)(1)(A)(i) (citing 8 U.S.C. § 1182(a)(6)(C), (a)(7)); *see also Jennings*, 583 U.S. at 287. Moreover, there are only two categories of noncitizens eligible for expedited removal: (1) noncitizens "arriving in the United States"; and (2) certain noncitizens designated by the DHS Secretary[1] who "ha[ve] not been admitted or paroled into the United States" and cannot affirmatively show to an immigration officer that they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i), (iii); *see also Jennings*, 583 U.S. at 287.

Expedited removal authorizes DHS to remove noncitizens from the United States "'without further hearing or review.'" *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). But if a Section 1225(b)(1) noncitizen indicates to "an immigration officer . . . either an intention to apply for asylum . . . or a fear of persecution," then that noncitizen "shall" be referred for a "credible fear" interview with "an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii).

The asylum officer "shall conduct" this interview "either at a port of entry or at such other place designated by the Attorney General." 8 U.S.C. § 1225(b)(1)(B)(i). "If the asylum officer determines at the time of the interview that a[ ] [noncitizen] has a credible fear of persecution,[2] the [noncitizen] shall be detained for further

---

[1] Under the statute the Attorney General shall have this designation authority, but that authority has since been transferred to the DHS Secretary. *See* 6 U.S.C. §§ 251(2), 557; 8 C.F.R. § 235.3(b)(1)(ii).

[2] The term "credible fear of persecution" is defined as "a significant possibility, taking into account the credibility of the statements made by the [noncitizen] in

consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). That said, "if the officer determines that a[ ] [noncitizen] does not have a credible fear of persecution, the officer shall order the [noncitizen] removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I).

Detention under Section 1225(b)(1) is mandatory and does not guarantee any right to a bond hearing. *See Jennings*, 583 U.S. at 297. That said, for those noncitizens Section 1225(b)(1) does apply to, there is a narrow exception by which they "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Id.* at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 C.F.R §§ 212.5(b), 235.3.

### 2. Detention Under Section 1226(a)

Section 1226(a) generally applies to "certain [noncitizens] already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (citing 8 U.S.C. § 1226(a)). Unlike Section 1225(b)(1)'s mandatory detention provision, Section 1226(a) "serves as a source of discretionary detention authority and allows for the release, on bond or conditional parole, of noncitizens who are subject to this section." *Guerrero Orellana v. Moniz*, Nos. 25-2152, 26-1094, --- F.4th ----, 2026 WL 2352042, at *1 (1st Cir. Aug. 13, 2026) (emphasis added). The statute provides that, "[o]n a warrant issued by the Attorney General, a[ ] [noncitizen] may be arrested

support of the [noncitizen's] claim and such other facts as are known to the officer, that the [noncitizen] could establish eligibility for asylum." 8 U.S.C. § 1225(b)(1)(B)(v).

and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a).

An ICE officer "makes the initial determination for noncitizens subject to detention under section 1226(a)." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021). If the officer opts for continued detention, then the noncitizen has a Fifth Amendment Due Process right to seek review of that decision at a bond hearing (also known as a "custody redetermination hearing") before an IJ. *Id.* at 41. At that hearing, the Government bears the burden of proving either: (1) "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or (2) "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.*

**B. Factual and Procedural History**

Mr. Vargas is a native and citizen of Colombia. ECF No. 1 at 1. He entered the United States without inspection in March 2024. *Id.*; *see also* ECF No. 7-1 at 9. A U.S. Border Patrol ("USBP") agent apprehended Mr. Vargas at or near the border and arrested him shortly thereafter. ECF No. 7-1 at 9. The USBP agent found him to be "inadmissible" because he was "not in possession of a . . . valid entry document" under 8 U.S.C. § 1182(a)(7)(A)(i)(I), and he was placed in expedited removal proceedings under Section 1225(b)(1). *Id.*

An immigration officer later interviewed Mr. Vargas, who appeared to show "either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C.

§ 1225(b)(1)(A)(ii)). The record contains Mr. Vargas' Forms I-867A and I-867B[3] wherein Mr. Vargas stated that the purpose for his entry into the United States was "[r]unning from gangs/cartels." ECF No. 7-1 at 12. When asked whether he feared being returned to Colombia or if he would be harmed if returned there, Mr. Vargas answered "Yes" to both questions. *Id.* at 14. He added that he had "received threats" and had "a near miss stab wound on the neck with scars on [his] shoulder." *Id.*

The Government has also provided the Court with a notice stating that, on March 28, 2024, DHS paroled Mr. Vargas into the United States for "humanitarian reasons" under Section 1182(d)(5). *Id.* at 1. Since then, Mr. Vargas has resided in Revere, Massachusetts. ECF No. 1 at 1. He states that he "applied for asylum following his entry." *Id.* at 3.

On August 13, 2026, Mr. Vargas appeared at ICE's Boston Field Office in Burlington, Massachusetts for a regularly-scheduled reporting appointment. *Id.* at 2. At this appointment, ICE officers arrested and detained him pursuant to a "Warrant for Arrest of Alien," which provided that an immigration officer was authorized to arrest him under "section[ ] 236 . . . of the Immigration and Nationality Act[.]" *Id.*

On that same day, ICE notified Mr. Vargas that his parole had been "terminated as it has been determined that neither humanitarian reasons nor the

---

[3] These forms are also known as the "Record of Sworn Statement in Proceedings under Section [1225(b)(1)] of the Act." 8 C.F.R. § 235.3(b)(2)(i). They are used by an "examining immigration officer" in "every case in which the expedited removal provisions will be applied." *Id.* The officer uses them to "create a record of the facts of the case and statements made by the [noncitizen]." *Id.*

public benefit warrant[ed] [his] continued parole." *Id.* He is now being held at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. ECF No. 1 at 2.

Mr. Vargas filed the present petition on August 14, 2026. *Id.* The Government has responded and argues that the petition should be denied. ECF No. 7.

## II. DISCUSSION

The key dispute in this case is over the precise INA provision that governs Mr. Vargas' detention. Mr. Vargas asserts that he is subject to Section 1226(a) and is therefore entitled to a bond hearing as well as immediate release from ICE custody. ECF No. 1 at 1-2; ECF No. 8 at 8-10. The Government counters, arguing that he "is still being processed under the expedited removal procedures" and that he is therefore "subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) while his fear of persecution is assessed by an Immigration Court." ECF No. 7 at 5.

Detention under Section 1225(b)(1), as the Government correctly notes, "turns on the individual's status as an applicant for admission and the continued applicability of expedited removal procedures." ECF No. 7 at 5 n.3; *see Jennings*, 583 U.S. at 287 (providing that those covered by Section 1225(b)(1) are "applicants for admission" who are also "normally ordered removed . . . pursuant to an expedited removal process").

There is no question that Mr. Vargas is an applicant for admission. Once again, that term is defined as a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)). In addition, the parole statute provides that a grant

of parole "shall not be regarded as an admission" of the noncitizen. 8 U.S.C. § 1182(d)(5)(A). Thus, because Mr. Vargas is present in the United States, and his humanitarian parole is not regarded as "an admission," he remains an applicant for admission.

But is he subject to expedited removal such that the Government can detain him under Section 1225(b)(1)? As mentioned, expedited removal generally applies to those noncitizens deemed "inadmissible" due to fraud, misrepresentation, or lack of valid entry documentation. *See* 8 U.S.C. § 1225(b)(1)(A)(i); *see also Jennings*, 583 U.S. at 287. In this case, when a USBP agent encountered Mr. Vargas at the border in 2024, the agent found him to be "inadmissible" because he was "not in possession of a . . . valid entry document." ECF No. 7-1 at 9.

To reiterate, inadmissible noncitizens are eligible for expedited removal if they fall into one of two categories. The first category encompasses those subject to the Arriving In Provision, meaning those noncitizens "arriving in the United States." 8 U.S.C. § 1225(b)(1)(A)(i). The second category includes those subject to the Designation Provision, which encompasses noncitizens designated by the Secretary of Homeland Security who "ha[ve] not been admitted or paroled into the United States" and cannot affirmatively show to an immigration officer that they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii).

Mr. Vargas, however, is not subject to the Designation Provision. Recall that he was paroled into the United States in March 2024, and he has been physically present in the United States for over two years. ECF No. 7-1 at 1. That only leaves the Arriving In Provision contained in 8 U.S.C. § 1225(b)(1)(A)(i). The Government appears to suggest that, after the termination of his humanitarian parole, Mr. Vargas remains a noncitizen "arriving in the United States." ECF No. 7 at 4 (citing *A.M. v. Joyce*, No. 2:25-cv-615-LEW, 2025 WL 3706922, at *4 (D. Me. Dec. 22, 2025)). But just as Judge Guzman of the U.S. District Court for the District of Massachusetts recently found, "careful consideration" of Section 1225(b)(1)(A)(i)'s statutory text "cannot support the result the [Government] asks for here." *de Jesus Santos v. Mullin*, No. 4:26-cv-11590-MRG, --- F. Supp. 3d ----, 2026 WL 2390130, at *13 (D. Mass. Aug. 17, 2026).

To start, the INA "does not define 'arriving.'" *Coal. for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 62 (D.D.C. 2025), *vacated on other grounds sub nom.*, *Coal. for Humane Immigrant Rts. v. Mullin*, No. 25-5289, --- F.4th ----, 2026 WL 2317908 (D.C. Cir. Aug. 11, 2026). But a DHS regulation defines "arriving alien" as follows:

> Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.

8 C.F.R. § 1.2.[4] Another DHS regulation specifies that certain classes of noncitizens are subject to expedited removal, including "[a]rriving aliens, as defined by 8 C.F.R. § 1.2." 8 C.F.R. § 235.3(b)(1)(i).

Despite these definitional regulations, the Supreme Court has made clear that "[c]ourts must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). Though "courts may . . . seek aid from the interpretations of those responsible for implementing particular statutes," they need not seek such aid. *Id.* After all, "agencies have no special competence in resolving statutory ambiguities. Courts do." *Id.* at 400-01.

Thus, the Court need not credit DHS's interpretation of "arriving" such that a noncitizen "remains an arriving alien even if paroled . . . and even after any such parole is terminated or revoked." 8 C.F.R. § 1.2. This reading essentially "transforms a present-tense process description enacted in a statute into a permanent irrevocable legal status lasting indefinitely—regardless of how long someone has actually lived in this country." *de Jesus Santos*, 2026 WL 2390130, at *16. If DHS had its way, "parole could expire thirty years after entry, and under the Defendants' construction, that person would still be 'arriving in.'" *Id.* But careful consideration of the statute's plain text demonstrates why this interpretation is wrong.

[4] 8 C.F.R. § 1.2 excepts certain noncitizens who received "a grant of advance parole." This exception does not apply to this case.

Just a few months ago, the Supreme Court considered a similar term— "arrives in the United States"—according to its "everyday" meaning. *Mullin v. Al Otro Lado*, 609 U.S. ----, 146 S. Ct. 2079, 2090 (2026). It determined that "[t]o 'arrive' is to 'reach a destination,'" and that "[a] person arrives in a geographic location only when he enters it." *Id.* at 2090.

With the statute at issue, "Congress used the present participle 'arriving in'—an active, ongoing description of someone currently in the process of reaching the country." *de Jesus Santos*, 2026 WL 2390130, at *14 (citing 8 U.S.C. § 1225(b)(1)(A)(i)). "This is not a status label that attaches permanently upon first contact with the border," but "[i]t describes what someone is doing at the moment of coming across." *Id.* "Someone who . . . was processed, paroled, and has lived in the [United States] for [years] is not 'arriving' in any ordinary sense of that word. Their arrival is long complete." *Id.*

Indeed, as other courts throughout the country have found, "[i]t is nonsensical to now classify [a noncitizen] as an 'arriving alien' subject to expedited removal . . . years after permitting him to live and work in the country." *Hernandez-Cine v. Voorhies*, No. 4:26-cv-421, 2026 WL 972364, at *4 (N.D. Ohio Apr. 10, 2026); *see also Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 307 (E.D.N.Y. 2025) ("[I]t would be illogical to find that [the petitioner] is still in the process of 'arriving' in the United States when she has been continuously residing in the United States for more than three years after the expiration of her humanitarian parole, gave birth to her son in

2022, and was granted USCIS work authorization for five years starting in June 2025.”).

Moreover, as the Supreme Court has confirmed, there is “nothing in [the] text [of the parole statute] that affirmatively authorizes detention, much less indefinite detention.” *Clark v. Martinez*, 543 U.S. 371, 385 (2005). Instead, the text of that statute provides that, upon revocation or termination of a noncitizen’s parole, “‘the [noncitizen] shall . . . be returned to the custody from which he was paroled and thereafter *his case shall continue to be dealt with in the same manner as that of any other applicant for admission*.’” *Id.* at 385-86 (emphasis in original) (quoting 8 U.S.C. § 1182(d)(5)(A)).

Applying the plain meaning of the term “arriving,” Mr. Vargas can no longer be classified as a noncitizen who is “arriving in the United States” under Section 1225(b)(1)(A)(i). To be sure, it was fair for ICE to classify him as such when he was initially detained at the border in March 2024. But when ICE arrested him on August 13, 2026—more than two a half years after he entered the United States—Mr. Vargas was not then, nor is he now, in the process of “arriving” in the United States. *See, e.g.*, *Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59, 68 (D.N.H. 2025) (“§ 1225(b)(1) only mandates the detention of applicants for admission who are ‘arriving in the United States.’ As of July 2025, [Petitioner] was no longer ‘arriving in the United States’—he had been living here for nearly two years.”); *Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 111 (D. Mass. 2020) (“Under the statutory language, if applicants are apprehended while crossing the border (whether or not at a check

point), they are 'arriving' applicants under the statute, and if apprehended at some point thereafter, they are not 'arriving,' but rather 'alien[s] present in the United States who [have] not been admitted.'").

The Court therefore finds Mr. Vargas to be detained under Section 1226(a), which governs the detention of "noncitizens . . . who are present in the United States without admission[.]" *Guerrero Orellana*, 2026 WL 2352042, at *11. He is therefore entitled to a bond hearing before an IJ. *See Hernandez-Lara*, 10 F.4th at 41.

That Mr. Vargas is subject to Section 1226(a) rather than Section 1225(b)(1) is buttressed by the Government's own evidence in the record. When ICE arrested Mr. Vargas on August 13, 2026, the agency issued him a "Warrant for Arrest of Alien." ECF No. 7-1 at 2. That warrant stated that immigration officers were authorized to arrest Mr. Vargas "pursuant to section[ ] 236 . . . of the Immigration and Nationality Act[.]" *Id.* This section of the INA is codified at 8 U.S.C. § 1226, which, again, authorizes DHS to arrest and detain a noncitizen "*[o]n a warrant* issued by the Attorney General . . . pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added).

In other words, it hardly makes sense to treat Mr. Vargas as a noncitizen covered by Section 1225(b)(1) when the Government itself has treated him as though he is subject to Section 1226(a). *See, e.g.*, *Jimenez*, 799 F. Supp. 3d at 67 ("[W]hile the government argues that [the petitioner] is presently detained under § 1225(b), that argument ignores the statutory authority that the government itself relied on for [the petitioner's] . . . recent arrest."); *cf. Gomes v. Hyde*, 804 F. Supp. 3d 265, 276

(D. Mass. 2025) ("Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States. Because [the petitioner] was arrested on such a warrant and detained pursuant to Section 1226, he is subject to Section 1226(a)'s discretionary detention framework[.]").

Finally, because the Government did not have the legal authority to detain Mr. Sanon under the authority that it claims (Section 1225(b)(1)), the Court also finds his immediate release to be appropriate. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."); *cf. Guerrero Orellana*, 2026 WL 2352042, at *1 (holding that a district court, which found a noncitizen's detention to be governed by Section 1226(a) and not Section 1225(b)(2)(A), "was right to order the government to release [the noncitizen] or provide him with a bond hearing").

## III. CONCLUSION

The Court therefore GRANTS Mr. Vargas' Petition. ECF No. 1. The Government is hereby ORDERED to <u>release Daniel Vargas Mesa immediately</u>. Per its request, the Government is permitted to transfer Mr. Vargas to ICE's Boston Field Office in Burlington, Massachusetts for the sole purpose of processing his release and allowing for any return of property. ECF No. 7 at 1 n.1. However, the Court DENIES the Government's additional request to place "any monitoring equipment deemed appropriate." *Id.* Because the Government did not have the lawful authority to detain Mr. Vargas in the first place, the Court will not permit the Government to

keep him "in custody" through the use of monitoring equipment pending the bond hearing. *See Morales v. Hyde*, No. 26-cv 093-JJM-PAS, 2026 WL 508811, at *3-4 (D.R.I. Feb. 24, 2026) (denying similar request from the Government because "[i]t does not follow . . . that ICE gets to keep [the petitioner] 'in custody' once he leaves the Wyatt Detention Facility"). Effectuating Mr. Vargas' transfer to Burlington shall not in any way impede his **immediate release**.

The Government is also ORDERED to **provide Daniel Vargas Mesa with a bond hearing before an IJ** under 8 U.S.C. § 1226(a) within ten days of the date of this Order. Should it choose to pursue Mr. Vargas' continued detention, the Government must show why less restrictive alternatives to detention would be inadequate for it to achieve its goals. *See Higiro v. Nessinger*, No. 26-cv-105-JJM AEM, 2026 WL 710297, at *8 (D.R.I. Mar. 13, 2026) (finding that due process requires IJs to consider alternatives to detention at bond hearings to ensure that detention is not arbitrarily imposed and bears a reasonable relation to the Government's interests). The IJ shall consider any alternatives to detention before making a finding as to flight risk or dangerousness. *See Brito v. Garland*, 22 F.4th 240, 254 (1st Cir. 2021) (noting that to require otherwise would be "to put the cart before the horse").

Finally, the Court ORDERS the Government to file a status report within five days of Mr. Vargas' bond hearing, stating whether he has been granted bond. If Mr. Vargas' request for bond is denied, the Government shall state the reason for that denial and whether Mr. Vargas has been re-detained by ICE.

IT IS SO ORDERED.

***/s/ John J. McConnell, Jr.***

_________________________________
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

August 24, 2026